# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| HAMP CRUM, III, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No.: 2:20-cv-00449-MHH |
| v. ) | |
| ) | |
| FORWARD AIR SOLUTIONS, ) | |
| INC., ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

In his Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Doc. 35), Plaintiff concedes that Defendant Forward Air Solutions, Inc. ("FAS" or "Defendant") "is covered by the Motor Carrier Act." (Doc. 35, p. 2 n.1). Indeed, "Plaintiff's **only** challenge" to FAS's Motion is his assertion "that he does not meet the definition of a Loader and, therefore, is not covered by the Motor Carrier Act exemption." *Id.* (emphasis added). Plaintiff presents *not a single case* in his favor and no facts that undermine the inescapable conclusion that he was a "loader" under the Motor Carrier Act ("MCA"). As discussed more fully below, because FAS is a carrier who is subject to the Secretary of Transportation's jurisdiction and (2) Plaintiff, as a loader, engaged in activity that affected the safety

-1-

of FAS's trucks in the transportation of property in interstate commerce, Plaintiff was an exempt employee under the MCA Exemption.

### A. The Material, Indisputable Facts Demonstrate Plaintiff was a Loader.

Plaintiff admits nearly every material fact presented by FAS. (Doc. 35, pp. 2-3, ¶¶ 1-7, 9-10, 12, 14, 17). The facts he denies have no identifiable basis (*Id*., ¶¶ 13, 15-16) and/or no bearing on the sole remaining issue, i.e., whether Plaintiff was exempt under the MCA. (*Id*. ¶¶ 8, 11). This Court must find that Plaintiff is exempt under the MCA because:

- Ninety percent (90%) of Plaintiff's day was spent loading FAS trucks and, on the days that Plaintiff loaded the trucks, he spent more than three hours of each day performing the loading. (Doc. 30-1, p. 23: tp 92:6-22).

- When Plaintiff was a Dock Supervisor (the time period in question), all of the items loaded onto trucks in the Montgomery Terminal came from locations outside Alabama and the trucks loaded routinely made deliveries to locations outside Alabama. (Doc. 31, p. 2, ¶¶9-10; Doc. 35, p.2, ¶¶9-10).

- Plaintiff used his own discretion in deciding how to load the trucks: "Like I told you, common sense to me would be to put the heavy boxes on the floor, that's just me. But I never received any instructions on how to load a truck at Forward Air, where goes where . . . ." (Doc. 30-1, p. 27: tp 106:9-13).

- There is a safe and unsafe way to place products on a pallet and load boxes onto a truck. The safe way would be to use heavier boxes as the base and then place lighter boxes on top; the unsafe way would be to put lighter boxes on the bottom. Plaintiff used this same methodology when loading boxes onto FAS trucks. (Doc. 30-1., p.14: tp 55:13-21; p, 26: tp 104:9-18).

- Plaintiff had no supervision to determine how to load the boxes onto the trucks. (Doc. 30-1, p.19: tp 73:17-23; p, 33: tp 129:5-7; p. 33: tp 131:12-16; Doc. 35, p.3 ¶14).

### B. The MCA Exemption Applies to Plaintiff.

FLSA exemptions are to be given a fair rather than a narrow interpretation. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). The FLSA exempts employers -- like FAS (as Plaintiff admits) -- subject to the jurisdiction of the Secretary of Transportation under the MCA from its overtime provisions. 29 U.S.C. § 213(b)(1). The MCA Exemption applies to any loader whose duties affect the safe operation of motor vehicles in interstate transportation. *See, e.g., Lloyd v. Hi-Ridge Transp.*, 396 F. Supp. 2d 1290, 1296 (M.D. Ala. 2005)*;* 29 C.F.R. §§ 782.2(a)-(b)(2).

### 1. **Plaintiff engaged in activities that directly affected the safety of operation of motor vehicles in transporting property in interstate commerce.**

Plaintiff concedes the MCA Exemption applies even if employees perform some tasks that directly affect safety and others that do not, unless the safety-affecting duties are *de minimis*. *Lloyd*, 396 F. Supp. 2d at 1297. Courts consistently define *de minimis* to mean less than one percent. *See, e.g., Minor v. Cent. Forest Prods.*, No. 3:19-CV-01631-CLS, 2021 U.S. Dist. LEXIS 54046, at *26-27 (N.D. Ala. Mar. 23, 2021).

In *Lloyd*, for example, the Court found that plaintiff's work on brakes and tires

was directly related to safety and may subject him to the MCA Exemption[1]. *Id*. The *Lloyd* Court ultimately could not determine how much time was spent on safety-affecting tasks based on the ambiguity of the plaintiff's testimony. *See id*. at 1298 (noting when the plaintiff was questioned if he performed these tasks regularly, he responded "not too regular.")

*A fortiori*, in the present case, where Plaintiff unequivocally testified that 90% of his day was spent loading trucks, there is no ambiguity as found in *Lloyd*.[2] Moreover, even if Plaintiff spent some time unloading (which would be less than 10% of his time, according to his testimony), the regulations explicitly state that a loaders' duties will "usually also include unloading and the transfer of freight between the vehicles and the warehouse." 29 C.F.R. § 782.5(a).

Importantly, while Plaintiff loaded those trucks, he *was* concerned with how the weight of the freight was distributed on the truck. When testifying about loading trucks, Plaintiff specifically referenced his testimony regarding how he placed products on a pallet for "safety" reasons. (Doc. 30-1, p. 26: tp 103:13-104:18.) He stated that he tried to put heavier boxes on the floor to build a base, just as he did

---

[1] In *Lloyd,* the Court also found that plaintiff's brake work, unlike Plaintiff's work in the present case, was supervised by another individual.

[2] Plaintiff asserts that he did only unloading while on first shift (doc. 35, p. 2, ¶ 8), but that contention has no application to this matter. Plaintiff's FLSA claim only involves the time after Plaintiff became a Dock Supervisor; that occurred after Plaintiff transferred to second shift in early 2019 and continued while Plaintiff was on third shift. (Doc. 31, p. 21: tp: 83:15-19; p. 19: tp: 4-20.) Plaintiff's job duties while a Dock Lead on first shift should not be considered by the Court.

when building pallets, based on his understanding of physics. (*Id.*, p. 26: tp 104:1-18.)

Plaintiff's efforts to avert the importance of loading freight onto trucks safely mirror those of the plaintiff in *Mendoza v. Quirch Foods Co.*, No. 15-24005-CIV, 2017 U.S. Dist. LEXIS 161551, at *17 (S.D. Fla. Sep. 30, 2017). Just like in *Mendoza*, Plaintiff "attempts to escape the fact that this testimony makes clear that as part of his loading duties, he was tasked with ensuring that the truck was loaded in a manner that did not pose a safety hazard" by focusing on the fact that he tried to put as much freight on the truck as quickly as possible. *See* Doc. 35, Attachment A-Plaintiff's Declaration, ¶¶ 12, 19.

Furthermore, as FAS stated in its Motion, because Plaintiff was given no instructions regarding how to load the trucks, he *necessarily* exercised judgment and discretion "in placing, distributing, or securing the pieces of freight" in a manner meant to ensure the efficient and safe operation of the trucks. (Doc. 30-1, p. 27: tp 106:5-16.)

Courts in this Circuit look to the fact that an employee often loads delivery trucks by himself as evidence that the employee exercised the required judgment and discretion in placing, distributing, or securing the pieces of freight in a manner to ensure the safe operation of the trucks. *See, e.g., Rodriguez v. Pan & Plus Baking, LLC*, No. 12-23193-CIV, 2013 U.S. Dist. LEXIS 55015, at *19 (S.D. Fla. Apr. 17,

2013) ("Mr. Simon loaded all of the outgoing product onto the delivery trucks, almost always by himself. …. [i]t certainly appears that Mr. Simon's warehouse duties were those of a loader. … [T]he fact that he often loaded the delivery trucks by himself indicates that he exercised the required judgment and discretion in 'placing, distributing, or securing the pieces of freight' in a manner meant to ensure the efficient and safe operation of the delivery trucks."); *Lewis v. Eskridge Trucking Co.*, No. 7:09-cv-01691-LSC, 2011 U.S. Dist. LEXIS 165944, at *7 (N.D. Ala. Jan. 20, 2011).

In *Lewis*, for example, this Court found that the plaintiff was exempt from the FLSA despite his contention that he had little discretion in the layout and distribution of freight being transported because he admitted that he worked without supervision and that he had discretion in loading the trailers.

> Lewis contends that he had little discretion in the layout and distribution of the wood shavings, rendering the MCA inapplicable and allowing him to assert FLSA overtime claims. Eskridge points out that Lewis held the loader position with Eskridge Trucking, referred to himself as a loader, worked without supervision, and admitted he had discretion in loading the trailers. The FLSA exempts Lewis. He meets the loader exemption because he exercised discretion in building the load and because, more generally, his activities affected the safety of the trailers. 29 C.F.R. § 782.5(a); 29 C.F.R. § 782.2(a)….Lewis admitted that he exercised his independent judgment, that he used his discretion, and that no 'Eskridge supervisor [was ever] on site to check whether [he was] doing it correctly.'
>
> *Lewis*, 2011 U.S. Dist. LEXIS 165944, *7-8.

Just like in *Lewis*, Plaintiff had no supervision upon which to rely to determine how he was to load the boxes onto the truck to be transported. (Doc. 30-1, p. 19: tp 73:17-23; p. 33: tp 129:5-7; p. 33: tp 131:12-16.) Therefore, the fact that Plaintiff often loaded the delivery trucks by himself indicates that he exercised the required judgment and discretion.

Here, Plaintiff also admits that part of his job as a Dock Supervisor was to give instructions and to assist others in loading trucks. (Doc 35, p. 14; Doc. 30-3, p. 14: Response to Interrog. No. 26; Doc. 30-1 p. 49: tp 193:17-21.) Thus, Plaintiff was not directed by the judgment and discretion of a supervisor in determining how to load the trucks; instead, it was Plaintiff who was entrusted with using his own judgement to determine how to place the freight. Plaintiff's unsupervised loading meets the exemption requirement, and Plaintiff has not identified *a single case* that holds that an employer has to prove or that the Court has to determine what loading activities affect safety. The Secretary of Transportation has already determined that loading duties affect safety. Plaintiff, as a loader, directly affected the safety of the operation of the trucks operating in interstate commerce, and therefore, Plaintiff falls under the MCA Exemption.

### 2. Plaintiff's previous FLSA classification is irrelevant.

Plaintiff claims that, because FAS previously paid him overtime compensation as a Dock Lead, he should also be eligible for overtime compensation

as Dock Supervisor. This argument is a red herring and contrary to law. In his Complaint, Plaintiff states that "[a]t all times relevant to this action, Defendant employed Plaintiff in the capacity of Dock Supervisor." (Doc. 1, ¶ 20.) Plaintiff's FLSA status in a previous position, even one with arguably similar duties, has no bearing on his status in the Dock Supervisor position. The Eleventh Circuit has found that an employer's prior classification of an employee is not relevant to the analysis of an employee's exemption status. *See Ehrlich v. Rich Prods. Corp.*, 767 F. App'x 845, 850 n.3 (11th Cir. 2019). In *Ehrlich*, the Court found that an employer's decision to begin paying employees overtime had no relevance in determining whether the employees fell within the exemption claimed by the employer. *Id*. "An employee's exemption from overtime depends only upon that employee's job duties." *Id*.

Also, despite Plaintiff's assertions to the contrary, FAS is not obligated to present evidence to explain why Plaintiff was paid overtime compensation as a Dock Lead but was ineligible for overtime compensation as a Dock Supervisor. As previously stated, FAS's classification of Plaintiff's former position is not at issue in this case. Further, "[t]he movant is not required to negate his opponent's claim. The movant may discharge his burden by merely 'showing' -- that is, pointing out to the district court -- *that there is an absence of evidence to support the non-moving party's case." Bythewood v. Unisource Worldwide, Inc.*, 413 F. Supp. 2d 1367, 1372

(N.D. Ga. 2006) (internal citations omitted). FAS has done so by presenting evidence that Plaintiff was exempt and, therefore, not entitled to overtime compensation as a Dock Supervisor.

### 3. **FAS's motivation for promoting Plaintiff is also not relevant**.

Similarly, Plaintiff's conjecture that FAS promoted Plaintiff so that he would be "working for free" is meritless and irrelevant. "At the summary judgment stage, such 'evidence,' consisting of one speculative inference heaped upon another", is entirely insufficient to defeat summary judgment. *Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011). Furthermore, an employer's subjective motivations are not relevant to the inquiry of whether or not an employee meets the requirements for exemption under the FLSA. *Evans v. McClain, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997) (finding appellant's argument that he was given a salary in an attempt to "obviate the requirements of the National Labor Relations Act" immaterial). The FLSA simply requires employers to pay certain employees overtime. *Williams v. Johnny Kynard Logging*, Inc., No. 2:11-CV-2138-VEH, 2013 U.S. Dist. LEXIS 67033, at *12 (N.D. Ala. May 10, 2013). It does not prohibit transferring an employee from a non-exempt position to an exempt position to avoid paying the employee overtime. *Id.*

### 4. **Plaintiff has not met his ultimate burden**.

Finally, Plaintiff's remaining arguments lose sight of his ultimate burden. "To

prove a violation of the FLSA, a plaintiff employee bears the initial burden of proving that he performed work for which he was not properly compensated." *Cusumano v. Maquipan Int'l, Inc*., 390 F. Supp. 2d 1216, 1220 (M.D. Fla. 2005) (internal citations omitted). Plaintiff has not shown that there is a genuine dispute of *material* fact related to his claim that he was improperly compensated. Plaintiff also cannot rely on FAS's denial of allegations in its Answer to defeat FAS's Motion for Summary Judgment. Denials of the allegations in the complaint offer no facts to support a genuine issue for trial. *SE Prop. Holdings, LLC v. Chung*, No. 5:12-cv-380-RS-GRJ, 2013 U.S. Dist. LEXIS 196078, at *5 (N.D. Fla. Sep. 11, 2013). Denials alone cannot defeat a motion for summary judgment. *Id.*

WHEREFORE, for the reasons set forth above, Defendant's Motion for Summary Judgment should be granted.

> Respectfully submitted this 1st day of July, 2021.

|  | By:*/s/ Wesley C. Redmond*<br>Jeffrey D. Mokotoff<br>Georgia Bar No. 515472<br>jmokotoff@fordharrison.com<br><br>FORDHARRISON LLP<br>271 17th Street, N.W.<br>Suite 1900<br>Atlanta, GA 30363<br>Telephone:  (404) 888-3800<br>Facsimile:   (404) 888-3863<br>(*Pro Hac Vice Motions to Be Filed*)<br><br>*and*<br><br>Wesley C. Redmond<br>Alabama Bar No. ASB-3666-D30W<br>wredmond@fordharrison.com<br>FORDHARRISON LLP<br>420 20th Street North<br>Suite 2560<br>Birmingham, Alabama  35203<br>Telephone:   (205) 244-5904<br><br>*Counsel for Defendant* |
|---|---|

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on 1st July, 2021, he electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to the following attorney of record:

Gregory O. Wiggins, Esq.
Wiggins, Childs, Pantazis, Fisher & Goldbarb LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

                                             */s/ Wesley C. Redmond*
                                             Wesley C. Redmond

WSACTIVELLP:12391157.1